UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

|  |  |
|---|---|
| **MELVIN ERVING**, | **2:21-CV-12348-TBG-DRG** |
| Petitioner, |  |
| vs. | **OPINION & ORDER DENYING THE HABEAS PETITION & DENYING A CERTIFICATE OF APPEALABILITY** |
| **MICHAEL BURGESS**, |  |
| Respondent. |  |

Michigan prisoner Melvin Erving ("Erving"), through counsel, has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Erving was convicted of kidnapping and two counts of first-degree criminal sexual conduct following a jury trial in the Wayne County Circuit Court. He was sentenced to 15 to 30 years in prison on the kidnapping conviction and to concurrent terms of 20 to 40 years in prison on the each of the sexual assault convictions in 2019. In his habeas petition, he raises claims concerning the impartiality of the trial judge, the admission of the victim's preliminary examination testimony and his confrontation rights, the prosecution's efforts to produce the witness, and the effectiveness of trial counsel. For the reasons below, the Court **DENIES** and **DISMISSES WITH PREJUDICE** the habeas petition and **DENIES** a certificate of appealablity.

1

## I.   FACTS AND PROCEDURAL HISTORY

Erving's convictions arise from his kidnapping and sexual assault of a woman in August 2011. The Michigan Court of Appeals described the relevant facts, which are presumed correct on habeas review, 28 U.S.C. § 2254(e)(1); *Wagner v. Smith*, 581 F.3d 410, 413 (6th Cir. 2009), as follows:

> On August 25, 2011, between 10:45 p.m. and 11:45 p.m., the victim was walking alone to a gas station near her home when a man driving a 2009 burgundy Impala stopped the victim and asked for directions. When the victim leaned towards the car, the man grabbed the victim's arm, "snatched" her into the front-passenger seat of his vehicle, locked the door, and drove away. The man held the victim down with one hand and stated, "I think you know what I'm about to do to you." When the victim looked in the man's direction, he punched the victim in the face and said, "Don't look at me."
>
> The man drove to an isolated area and parked, then penetrated the victim vaginally, flipped her over, and penetrated her anally. The man did not use a condom and ejaculated. When the victim tried to look in the man's direction, he hit her. After the sexual assault, the man forced the victim to remove her clothing and kicked her out of his vehicle. The victim ran to a nearby building and cried for help. Employees at the building saw the victim, gave her a shirt, and called 911. One employee observed two vehicles "creeping" as if they were looking for someone, and one of the vehicles appeared to be a dark-colored four-door Impala.
>
> The victim was taken to a hospital, where Julie Carol Groat, a sexual assault nurse examiner (SANE), administered an examination and collected evidence for a DNA rape kit. The

victim told Groat that the man penetrated her vaginally and anally, and ejaculated near her anal-rectal area. The victim also told Groat that she had sex with her boyfriend within ninety-six hours of the sexual assault. Groat noted the victim had facial, neck, and anal pain, bruising on her right upper arm, and tearing in her anal canal, with active bleeding. Groat described the victim's demeanor as easily agitated and tearful, with outbursts of crying.

Detective Robert Kane with the Detroit Police Department's (DPD) Sex Crimes Unit spoke with the victim at the hospital the morning after the sexual assault. The victim described the perpetrator as a black male, around 39 to 40 years old, dark complexioned, with a round face, six feet in height, and with a medium build. The victim also told Detective Kane that the man drove a 2009 burgundy Impala.

The DNA rape kit that Groat collected was released to Detective Kane and received by Bode Technology in December 2011. A sperm fraction sample from the victim's labia majora contained the DNA of at least two individuals, with the victim's boyfriend's DNA being the major component. However, a sperm fraction sample from the victim's right interior thigh was consistent with a male contributor, but the victim's boyfriend was excluded. Eventually, the Michigan State Police (MSP) entered the DNA profile from the victim's right interior thigh into the Combined DNA Index System, which matched that DNA with defendant's DNA. Detective Regina Swift took defendant's buccal swab, and in September 2018, the MSP confirmed that defendant's buccal swab DNA extract matched the DNA profile from the victim's right thigh. When Detective Swift interviewed the victim, she was unable to identify defendant in a photographic array. At defendant's preliminary examination, however, the victim identified defendant as her assailant.

*People v. Erving*, No. 347728, 2020 WL 5582263, *1 (Mich. Ct. App. Sept. 17, 2020).

Following his convictions and sentencing, Erving filed a motion for a new trial or *Ginther* hearing with the state trial court, which granted the *Ginther* hearing request. Mot. Hrg. Tr., ECF No. 10-14.

At that hearing, trial counsel testified that Erving told him that he had used prostitutes at the time of the crime and that he did so after getting off work around 2:00 a.m. Evid. Hrg. Tr., ECF No. 10-15, PageID.945. Counsel could not recall whether they discussed Erving's appearance in 2011. *Id.* at PageID.945–946. Counsel testified that Erving told him that he never owned a red or burgundy Impala or Malibu. *Id.* at PageID.947. He recalled Erving's mother telling him the same. *Id.* at PageID.948. Counsel testified that he did not think Erving's appearance was "strikingly different" from the victim's description and that he did not focus on the car because of the DNA evidence. *Id.* at PageID.949. Counsel recalled that DNA evidence not attributed to Erving or the victim's boyfriend was found on the victim so his strategy was to argue that someone else was responsible for the assault and create reasonable doubt that Erving committed the crime. *Id.* at PageID.949–951. He also

recalled arguing the prostitution angle based on police testimony that the area in question was frequented by prostitutes. *Id*. at PageID.951–952. Counsel also testified that he talked to Erving about testifying at trial and initially wanted him to testify, but changed his advice when the victim failed to appear to testify because he could challenge the timeline of events better without Erving's testimony. *Id*. at PageID.952–953. Counsel recalled advising Erving that certain prior convictions could be used for impeachment, but he did not have convictions involving theft or dishonesty such that it did not affect his advice. *Id*. at PageID.953–954. Counsel stated that he did not call Erving's mother to testify at trial because of the DNA evidence and credibility concerns. *Id*. at PageID.954–955.

Erving's mother testified that she met with trial counsel about three times and told him that Erving drove a Lexus not a burgundy Malibu and that he "didn't have no hair" in 2011. *Id*. at PageID.976–978.

Erving testified that he told trial counsel that he did not have hair or a beard in 2011 and that he did not have a red Chevrolet in 2011, but drove a Lexus. *Id*. at PageID.982–983. He recalled discussing whether he should testify at trial and stated that counsel advised him not to testify

because he had a prior criminal history. *Id*. at PageID.983–985. Erving claimed that he had consensual sex with the victim for money and denied raping her. *Id*. at PageID.990–991. Erving admitted that he was asked about testifying at trial and that he told the trial court that it was his choice not to testify and that he had not been promised anything or threatened. *Id*. at PageID.991.

At the close of the hearing, the trial court concluded that Erving failed to show that trial counsel was ineffective and denied the motion for new trial. *Id*. at PageID.1005–1006.

Erving then filed an appeal of right with the Michigan Court of Appeals essentially raising the same claims presented on habeas review. The court denied relief on those claims and affirmed his convictions and sentences. *Erving*, 2020 WL 5582263 at *2–8. Erving also filed an application for leave to appeal with the Michigan Supreme Court, which was denied in a standard order. *People v. Erving*, 507 Mich. 931, 957 N.W.2d 781 (2021).

Erving, through counsel, thereafter filed his federal habeas petition. He raises the following claims:

I.   The Michigan Courts unreasonably applied Supreme
     Court law in denying him a new trial where the trial

judge, in her previous occupation as an assistant prosecuting attorney, prosecuted him for an assault which resulted in an acquittal, and she should have recused herself to avoid the appearance of impropriety.

II. The Michigan Courts unreasonably applied Supreme Court law in denying him a new trial where he was denied his right to confrontation and a fair trial by the introduction, over objection, of complainant's preliminary examination testimony.

III. The Michigan Courts unreasonably applied Supreme Court law in denying him a new trial where complainant was deemed unavailable to testify in person at trial, and that the prosecution was permitted to read her prior recorded testimony from the preliminary examination to the jury, as the prosecution failed to present a sufficient demonstration of the exercise of due diligence to ensure her appearance, thus denying him his constitutional right to confront his accuser.

IV. The Michigan Courts unreasonably applied Supreme Court law in denying him a new trial where counsel rendered ineffective assistance by advising him that his prior convictions were impeachable, thereby causing him to remain silent and not describe his 2011 appearance and vehicle and not explain how his DNA became located on complainant where there was evidence that unknown male DNA was also present and by failing to call him and others to testify that in 2011 he did not drive a burgundy Impala and was clean shaven.

*See* Pet., ECF No. 3, PageID.158–159. Respondent has filed an answer to the petition contending that it should be denied because the claims lack merit. Ans., ECF No. 9.

7

## II.   LEGAL STANDARDS

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), codified at 28 U.S.C. §§ 2241–2255, sets forth the standard of review that federal courts must use when considering habeas petitions brought by prisoners challenging their state convictions. AEDPA provides in relevant part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim —
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

"A state court's decision is 'contrary to' … clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [that] precedent.'" *Mitchell*

*v. Esparza*, 540 U.S. 12, 15–16 (2003) (per curiam) (quoting *Williams v. Taylor*, 529 U.S. 362, 405–406 (2000)); *see also Bell v. Cone*, 535 U.S. 685, 694 (2002). "[T]he 'unreasonable application' prong of § 2254(d)(1) permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts' of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413); *see also Bell*, 535 U.S. at 694. However, "[i]n order for a federal court to find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous. The state court's application must have been 'objectively unreasonable.'" *Wiggins*, 539 U.S. at 520–521 (citations omitted); *see also Williams*, 529 U.S. at 409. The "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' and 'demands that state-court decisions be given the benefit of the doubt.'" *Renico v. Lett*, 559 U.S. 766, 773 (2010) (quoting *Lindh v. Murphy*, 521 U.S. 320, 333 n.7 (2010); *Woodford v. Viscotti*, 537 U.S. 19, 24 (2002) (per curiam)).

A state court's determination that a claim lacks merit "precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). The Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* (citing *Lockyer v. Andrade,* 538 U.S. 63, 75 (2003)). Under § 2254(d), "a habeas court must determine what arguments or theories supported or ... could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the Supreme Court. *Id.* at 102.

Thus, in order to obtain habeas relief in federal court, a state prisoner must show that the state court's rejection of his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 103; *see also White v. Woodall*, 572 U.S. 415, 419–420 (2014). Federal judges "are required to afford state courts due respect by overturning their decisions only when there could be no reasonable

dispute that they were wrong." *Woods v. Donald*, 575 U.S. 312, 316 (2015). A petitioner cannot prevail as long as it is within the "realm of possibility" that fairminded jurists could find the state court decision to be reasonable. *Woods v. Etherton*, 578 U.S. 113, 118 (2016).

Section 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with clearly established federal law as determined by the Supreme Court at the time the state conviction became final. *Williams*, 529 U.S. at 412; *see also Knowles v. Mirzayance*, 556 U.S. 111, 122 (2009) (noting that the Supreme Court "has held on numerous occasions that it is not 'an unreasonable application of clearly established Federal law' for a state court to decline to apply a specific legal rule that has not been squarely established by this Court") (citing *Wright v. Van Patten*, 552 U.S. 120, 123 (2008) (per curiam)); *Lockyer*, 538 U.S. at 71–72. Section 2254(d) "does not require a state court to give reasons before its decision can be deemed to have been 'adjudicated on the merits.'" *Harrington*, 562 U.S. at 100. Furthermore, it "does not require citation of [Supreme Court] cases — indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court

decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8 (2002); *see also Mitchell*, 540 U.S. at 16.

The requirements of clearly established law are to be determined solely by Supreme Court precedent. Thus, "circuit precedent does not constitute 'clearly established Federal law, as determined by the Supreme Court'" and it cannot provide the basis for federal habeas relief. *Parker v. Matthews*, 567 U.S. 37, 48–49 (2012) (per curiam); *see also Lopez v. Smith*, 574 U.S. 1, 6 (2014) (per curiam). The decisions of lower federal courts, however, may be useful in assessing the reasonableness of the state court's resolution of an issue. *Stewart v. Erwin*, 503 F.3d 488, 493 (6th Cir. 2007) (citing *Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003)); *Dickens v. Jones*, 203 F. Supp. 2d 354, 359 (E.D. Mich. 2002).

A state court's factual determinations are presumed correct on federal habeas review. *See* 28 U.S.C. § 2254(e)(1). A habeas petitioner may rebut this presumption only with clear and convincing evidence. *Warren v. Smith*, 161 F.3d 358, 360–361 (6th Cir. 1998). Moreover, habeas review is "limited to the record that was before the state court." *Cullen v. Pinholster*, 563 U.S. 170, 180 (2011).

### III.  DISCUSSION

#### A.  Judicial Bias Claim

Erving first asserts that he is entitled to habeas relief due to the appearance of judicial bias because the state trial judge did not recuse herself from his case even though she had previously, unsuccessfully prosecuted him in an unrelated criminal case. Respondent contends that this claim lacks merit.

The Due Process Clause of the Fourteenth Amendment requires a fair trial in a fair tribunal before a judge with no actual bias against the defendant or an interest in the outcome of the case. *See Bracy v. Gramley*, 520 U.S. 899, 904–905 (1997). Judicial misconduct claims involve two types of cases. One kind addresses charges of judicial bias stemming from a trial judge's personal interest in the outcome of a case, usually derived from some extrajudicial association with the cause or one of the parties. *See In re Murchison*, 349 U.S. 133, 136 (1955) ("no man is permitted to try cases where he has an interest in the outcome"). The second kind concerns charges of judicial misconduct in which the trial judge is accused of conducting the proceedings in a manner which exhibits a

"deep-seated favoritism or antagonism that would make fair judgment impossible." *Liteky v. United States*, 510 U.S. 540, 555–556 (1994).

Adverse rulings themselves are not sufficient to establish bias or prejudice. *See Liteky*, 510 U.S. at 555 ("judicial rulings alone almost never constitute a valid basis for a bias or partiality motion"); A constitutional violation occurs only when a judge's rulings or statements show "a predisposition 'so extreme as to display clear inability to render fair judgment.'" *Johnson v. Bagley*, 544 F.3d 592, 597 (6th Cir. 2008) (citation omitted). In reviewing a judicial bias claim, a federal habeas court should presume that the trial judge properly discharged his or her official duties. *Johnson v. Warren*, 344 F. Supp. 2d 1081, 1093 (E.D. Mich. 2004).

The Michigan Court of Appeals considered this claim on direct appeal and denied relief, essentially finding that it was unsupported. The court explained in relevant part:

> "The right to a fair tribunal is a right grounded in due process." *People v. Lowenstein*, 118 Mich. App. 475, 482–483; 325 N.W.2d 462 (1982). The party asserting that a judge is biased must overcome the heavy presumption of judicial impartiality. *Wade*, 283 Mich. App. at 470. In general, MCR 2.003 governs when disqualification of a judge is warranted. Defendant's argument for recusal — that the trial judge appeared biased based on her prior prosecution of defendant — is addressed in MCR 2.003(C)(1)(b), which states that disqualification is warranted when:

> (b) The judge, based on objective and reasonable perceptions, has either (i) a serious risk of actual bias impacting the due process rights of a party as enunciated in *Caperton v. Massey*, [556 U.S. 868]; 129 S. Ct. 2252; 173 L. Ed. 2d 1208 (2009), or (ii) has failed to adhere to the appearance of impropriety standard set forth in Canon 2 of the Michigan Code of Judicial Conduct. [MCR 2.003(C)(1)(b).]

Defendant does not contend that the trial judge failed to adhere to the appearance of impropriety standard set forth in Canon 2 of the Michigan Code of Judicial Conduct. Instead, defendant argues that the trial judge should have recused herself because a reasonable and objective person could perceive a serious risk of actual bias implicating due process based on the trial judge's previous prosecution of defendant. Yet defendant's assertion is broad, and he does not relate it to the facts of this case. That is, he appears to assert that it is a per se rule that if a trial judge previously prosecuted a defendant for a separate crime, then recusal is required.

Defendant cites no authority for such an assertion, persuasive or otherwise, and we believe that such a per se rule is neither necessary nor warranted. A prosecutor's role is to seek justice, not merely convict defendants. *People v. Dobek*, 274 Mich. App. 58, 63; 732 N.W.2d 546 (2007). Yet prosecutors are people, and *Caperton*, 556 U.S. at 883, requires "a realistic appraisal of psychological tendencies and human weakness." Thus, we recognize that it is possible for a prosecutor-turned-judge to harbor ill-will towards a defendant that was acquitted in a separate criminal case that the judge prosecuted. On the other hand, it seems equally (if not more) likely that a prosecutor-turned-judge could view a defendant's acquittal on a separate case that the judge prosecuted as justice being served. *See Dobek*, 274 Mich. App. at 63. We therefore conclude that the mere fact that a trial judge

previously prosecuted a defendant for a separate crime does not, standing alone, require recusal. Rather, there must be some fact beyond the trial judge's previous prosecution of a defendant for a separate crime to give rise to an objective perception of a serious risk of actual bias. Because the trial judge's previous prosecution of defendant is not by itself sufficient to require the judge to recuse herself, and defendant does not point to any additional facts about the previous prosecution that may suggest a serious risk of actual bias, defendant has failed to overcome the heavy presumption of judicial impartiality.

*Erving*, 2020 WL 5582263 at *2 (footnotes omitted).

The state court's decision is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts. There is no per se rule or due process requirement that mandates recusal of a trial judge because he or she previously prosecuted a defendant. *See, e.g., Corbett v. Bordenkircher*, 615 F.2d 722, 724 (6th Cir. 1980); *Jenkins v. Bordenkircher*, 611 F.2d 162, 166 (6th Cir. 1979) ("We have found no habeas corpus case which holds that it is a denial of due process for a judge to preside over a jury trial in a criminal case where the judge, as a prosecutor, had previously been involved in proceedings against the defendant in entirely unrelated cases."). "Absent some showing of hostility or prejudgment" a habeas court does do not "assume that a state court judge would not be able to give a defendant a fair trial solely

16

because of his earlier contacts with the defendant in prosecuting totally unrelated charges." *Jenkins*, 611 F.2d at 166.

In this case, Erving fails to provide a sufficient factual basis to support this claim. He does not cite to any instances in the record where the trial judge exhibited actual bias or was prejudiced against him. Conclusory allegations without evidentiary support are insufficient to warrant federal habeas relief. *See, e.g., Cross v. Stovall*, 238 F. App'x 32, 39–40 (6th Cir. 2007); *Workman v. Bell*, 178 F.3d 759, 771 (6th Cir. 1998) (conclusory allegations of ineffective assistance of counsel do not justify habeas relief); *see also Washington v. Renico*, 455 F.3d 722, 733 (6th Cir. 2006) (bald assertions and conclusory allegations do not provide a basis for an evidentiary hearing on habeas review).

Moreover, as discussed by Respondent, *see* Ans., ECF No. 9, PageID.337–338, the record reveals that the trial court took steps to ensure that the trial was conducted in a fair manner. Erving fails to show that the trial judge was biased against him or that she should have recused herself from his case. Habeas relief is not warranted on this claim.

17

## B.    Confrontation Claim

Erving next asserts that he is entitled to habeas relief because the victim did not testify at trial and the trial court admitted her preliminary examination testimony in violation of his confrontation rights. Respondent contends that this claim lacks merit.

The Confrontation Clause of the Sixth Amendment guarantees a criminal defendant the right to confront the witnesses against him or her. U.S. Const., Am. VI. One of the main concerns of the Confrontation Clause is to ensure the reliability of evidence through cross-examination. *Maryland v. Craig*, 497 U.S. 836, 845 (1990). The Confrontation Clause thus prohibits the admission of an out-of-court testimonial statement at a criminal trial unless the witness is unavailable to testify and the defendant had a prior opportunity for cross-examination. *Crawford v. Washington*, 541 U.S. 36, 55–59 (2004).

While the Sixth Circuit has noted that there is "some question whether a preliminary hearing necessarily offers an adequate prior opportunity for cross-examination for Confrontation Clause purposes," *Al–Timimi v. Jackson*, 379 F. App'x 435, 437–438 (6th Cir. 2010) (discussing *Vasquez v. Jones*, 496 F.3d 564, 577 (6th Cir. 2007)), the

Supreme Court has never held that a defendant is denied the right of confrontation when a witness is unavailable at trial and the court admits the witness's preliminary examination testimony. *Id.* at 438.

In fact, the Supreme Court has found no Confrontation Clause violation by the admission of an unavailable witness's prior testimony when there was an opportunity for cross-examination at the prior proceeding. *See Mattox v. United States*, 156 U.S. 237 (1895) (prior trial testimony); *see also Barber v. Page*, 390 U.S. 719, 725–726 (1968) ("there may be some justification for holding that the opportunity for cross-examination of a witness at a preliminary hearing satisfies the demand of the confrontation clause").

The Michigan Court of Appeals considered this issue under state and federal law on direct appeal and denied relief, essentially finding that the victim's preliminary examination testimony was properly admitted under state law and that Erving's confrontation rights were not violated because the victim was unavailable and he had an adequate opportunity to cross-examine her at the preliminary examination. The court explained:

> "'Hearsay' is a statement, other than the one made by the declarant while testifying at the trial or hearing, offered in

evidence to prove the truth of the matter asserted." MRE 801(c). Hearsay is inadmissible unless otherwise provided in the Rules of Evidence. MRE 802. MRE 804(b) provides several hearsay exceptions when a declarant is "unavailable" for one of the reasons provided in MRE 804(a). As relevant to this case, MRE 804(b)(1) states:

> (b) Hearsay Exceptions. The following are not excluded by the hearsay rule if the declarant is unavailable as a witness:
>
>> (1) Former Testimony. Testimony given as a witness at another hearing of the same or a different proceeding, if the party against whom the testimony is now offered, or, in a civil action or proceeding, a predecessor in interest, had an opportunity and similar motive to develop the testimony by direct, cross, or redirect examination.

Thus, former testimony is admissible as an exception to hearsay so long as the witness is unavailable and was subject to cross-examination during the prior testimony. If these requirements are met, the Confrontation Clause does not bar the former testimony. *People v. Garland*, 286 Mich. App. 1, 7; 777 N.W.2d 732 (2009) ("Former testimony is admissible at trial under both MRE 804(b)(1) and the Confrontation Clause as long as the witness is unavailable for trial and was subject to cross-examination during the prior testimony.").

There is no dispute that the victim's testimony given at defendant's preliminary examination constitutes testimony given "at another hearing of the same or a different proceeding ..." MRE 804(b)(1). *See People v. Garay*, 320 Mich. App. 29, 37; 903 N.W.2d 883 (2017), overruled in part on other grounds *People v. Skinner*, 502 Mich. 89; 917 N.W.2d 292 (2018). Defendant argues on appeal, however, that he did not have a similar motive to cross-examine the victim at

defendant's preliminary examination. This Court has given a list of non-exhaustive factors to consider when evaluating whether a party had a similar motive to develop the former testimony as required in MRE 804(b)(1):

> (1) whether the party opposing the testimony had at a prior proceeding an interest of substantially similar intensity to prove (or disprove) the same side of a substantially similar issue; (2) the nature of the two proceedings — both what is at stake and the applicable burden of proof; and (3) whether the party opposing the testimony in fact undertook to cross-examine the witness (both the employed and available but forgone opportunities). [*Farquharson*, 274 Mich. App. at 278 (quotation marks omitted).]

With regard to the first factor, defendant argues that he did not have an interest of substantially similar intensity to disprove whether defendant kidnapped and sexually assaulted the victim by force at the preliminary examination, as he did at trial. Defendant contends that the preliminary examination was not a proceeding where the truth of the matter was able to be examined. We disagree. The purpose of a preliminary examination is "to determine if a crime has been committed and, if so, if there is probable cause to believe the defendant committed it." *People v. Johnson*, 427 Mich. 98, 104; 398 N.W.2d 219 (1986) (quotation marks and citation omitted). The prosecution's purpose in presenting the victim's testimony at defendant's preliminary examination was to establish a reasonable belief that defendant was guilty of sexually assaulting the victim during the commission of the felony of kidnapping. The prosecution read the victim's testimony at defendant's trial for the same reason — to establish that defendant kidnapped the victim and penetrated the victim during the kidnapping. Therefore, defendant had an interest of substantially similar intensity in proving or disproving the victim's testimony. *See Garay*, 320 Mich. App.

at 37–38 (holding that, at a preliminary examination hearing, the defendant had "an interest of substantially similar intensity in proving or disproving" the testimony of two witnesses as he did at his trial because the prosecution presented the witnesses at the preliminary examination testimony to submit the same evidence that it used the witnesses to submit at trial) (quotation marks omitted).

For the second factor, defendant argues that because the applicable burden of proof at the preliminary examination was lower than it was at trial, *see People v. Yost*, 468 Mich. 122, 126; 659 N.W.2d 604 (2003), he approached his line of questioning differently and, thus, did not have a similar motive to develop the victim's testimony at the preliminary examination as he would at trial. This argument ignores that the same issues were at stake in both proceedings, and that, even though the burden of proof was lower, defendant had a similar motive in each proceeding to disprove the victim's testimony. *See Garay*, 320 Mich. App. at 38 ("Additionally, although the burden of proof was lower at the preliminary examination, defendant had a similar motive to cross-examine N and T at both proceedings — defendant was motivated to show that their testimony regarding what they saw and heard from their porch lacked credibility or was not accurate.") (Citations omitted.)

As for the third factor, defendant concedes that he cross-examined the victim at his preliminary examination. Though he concedes this point, defendant argues that he should still not be considered to have had the "opportunity" to cross-examine the victim as required by both MRE 804(b)(1) and the Confrontation Clause. Clearly, however, defendant had the opportunity to cross-examine the victim as required under MRE 804(b)(1). *See, e.g., People v. Meredith*, 459 Mich. 62, 67; 586 N.W.2d 538 (1998) (holding that the defendant, who chose not to cross-examine a witness at the preliminary examination, had the "opportunity" to do so). Indeed, defendant took advantage of his opportunity and cross-

22

examined the victim. Turning to defendant's related-Confrontation Clause argument, "the Confrontation Clause guarantees only an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." *Kentucky v. Stincer*, 482 U.S. 730, 739; 107 S. Ct. 2658; 96 L. Ed. 2d 631 (1987) (quotation marks and citation omitted). Again, defendant clearly had the opportunity for effective cross-examination of the victim at defendant's preliminary examination, so the Confrontation Clause is satisfied. *See Meredith*, 459 Mich. 62 at 71 ("Again, the fact that MRE 804(b)(1) is a firmly rooted exception means that, for present purposes, the prior testimony of the courier bears satisfactory indicia of reliability. The Confrontation Clause is satisfied, and the testimony is admissible.").

In sum, (1) the trial court properly concluded that the victim's testimony from defendant's preliminary examination was admissible at defendant's trial under MRE 804(b)(1) and (2) the admission of the testimony did not violate defendant's right to confrontation because defendant had the opportunity to cross-examine the victim at his preliminary examination.

*Erving*, 2020 WL 5582263, at *4–6 (alterations in original).

The state court's decision is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts. The record shows that the victim was unavailable at trial because although she initially appeared on the first day of trial, she was not called to testify and subsequently failed to appear on the second day of trial. Trial Tr., ECF No. 10-8, PageID.738–739. The prosecution's multi-day effort to locate her and produce her to testify at trial were unsuccessful. *Id.* at

PageID.739, 791–792; Trial Tr., ECF No. 10-9, PageID.799–800; Trial Tr., ECF No. 10-10, PageID.808–809. The record further indicates that the trial court conducted a preliminary examination in which both parties had the opportunity to question the victim and, in fact, did so. Prelim. Ex. Tr., ECF No. 10-3. Because the victim was unavailable to testify at trial and Erving had an adequate opportunity, and the same motive, to question her at the preliminary examination, his confrontation rights were not violated by the admission of her preliminary examination testimony at trial. *See Al-Timimi*, 379 F. App'x at 438–440; *see also Williams v. Bauman*, 759 F.3d 630, 636 (6th Cir. 2014) (citing *Al–Timimi* and denying habeas relief on similar claim). Habeas relief is not warranted on this claim.

### C.   Due Diligence Claim

Erving relatedly asserts that he is entitled to habeas relief because the prosecution did not exercise due diligence in attempting to secure the victim's presence to testify at trial. Respondent contends that this claim lacks merit.

A witness is 'unavailable' for purposes of the exception to the confrontation requirement if the prosecution makes a good faith effort to

24

obtain the witness's presence at trial. *Barber*, 390 U.S. at 725–26; *Winn v. Renico*, 175 F. App'x 728, 733 (6th Cir. 2006). When a witness refuses to testify, he or she is unavailable whether the refusal to testify is based upon privilege or is punishable by contempt. *See United States v. Bourjaily*, 781 F.2d 539, 544 (6th Cir. 1986) (quoting *Mayes v. Sowders*, 621 F.2d 850, 856 (6th Cir. 1980)). The lengths to which the prosecution must go to produce a witness is a question of reasonableness. *Hardy v. Cross*, 565 U.S. 65, 70 (2011); *United States v.* Chung, 350 F. App'x 19, 23 (6th Cir. 2009). "The ultimate question is whether the witness is unavailable despite good-faith efforts undertaken prior to trial to locate and present that witness. . . . The prosecution bears the burden of proof in this regard." *Winn*, 175 F. App'x at 733 (citations omitted).

The Michigan Court of Appeals considered this claim as a matter of state and federal law on direct appeal and denied relief, concluding that the prosecution made a good faith effort to secure the victim's testimony at trial. The court explained:

> The victim was declared unavailable under MRE 804(a)(5), which states:
>
> > (a) Definition of Unavailability. "Unavailability as a witness" includes situations in which the declarant--

\* \* \*

(5) is absent from the hearing and the proponent of a statement has been unable to procure the declarant's attendance (or in the case of a hearsay exception under subdivision (b)(2), (3), or (4), the declarant's attendance or testimony) by process or other reasonable means, and in a criminal case, due diligence is shown.

"The test for whether a witness is 'unavailable' as envisioned by MRE 804(a)(5) is that the prosecution must have made a diligent good-faith effort in its attempt to locate a witness for trial." *Bean*, 457 Mich. at 684. "The test is one of reasonableness and depends on the facts and circumstances of each case, i.e., whether diligent good-faith efforts were made to procure the testimony, not whether more stringent efforts would have produced it." *Id*.

Defendant contends the prosecution failed to show that reasonable, good-faith efforts were made to locate the victim. Defendant's argument is unavailing.

The prosecution personally served the victim with a subpoena for her appearance at trial. On the first day of trial, the prosecution sent a Lyft vehicle to the victim's home and transported the victim to court. The victim was not called to testify but waited in the witness room with the victim advocate and Detective Swift. On the second day of trial, the prosecution again sent a Lyft vehicle to the victim's home, and the victim sent a text message to the victim advocate stating that she was on her way to court. However, for unknown reasons, the victim failed to appear.

The prosecution thereafter attempted to locate and procure the victim's presence by: (1) calling the victim's cellular telephone on multiple occasions; (2) sending detectives to the victim's home, both in the morning and in the afternoon, and to another location where the victim often stayed; (3)

contacting the victim's brother; and (4) contacting the Wayne County Jail. Despite these efforts, the prosecution was unable to locate the victim. The prosecution did not request a witness detainer at the end of the second day of trial.

When the victim failed to appear on the third day of trial, however, the prosecution did request a witness detainer. The prosecution explained that after the second day of trial, it sent detectives to the victim's home and checked the hospitals, jails, and morgue, but was unable to locate the victim. The prosecution represented that neither the victim's brother nor boyfriend had been able to contact the victim, and that the victim's family was concerned.

On the fourth day of trial, the victim again failed to appear. The prosecution stated that it again had detectives search for the victim at multiple addresses, and contacted the victim's brother, boyfriend, hospitals, jails, morgue, and the DPD, but was still unable to locate the victim. It was at that time that the prosecution requested that the victim be declared unavailable under MRE 804b and that her testimony from defendant's preliminary examination be read into the record.

The trial court did not err by finding the prosecution exercised due diligence in its effort to locate the victim and secure her presence for trial. The prosecution subpoenaed the witness and secured her presence for the first day of trial. The prosecution attempted to do the same on the second day of trial, but the victim failed to appear for unknown reasons. The prosecution then spent the next two days using the resources reasonably available to it to locate the victim — it sent detectives to the victim's home and places that she was known to stay, it contacted members of the victim's family and others close to the victim that may have known her whereabouts, and it checked various places that the victim could be where she may be unable to contact others (hospitals, jails, and the morgue). Defendant faults the prosecution for not requesting a witness detainer on the second day of trial, and while

defendant is correct that the prosecution could have done so, our review is of the prosecution's actual efforts to secure the victim's presence, "not whether more stringent efforts would have produced it." *Id.* Based on the prosecution's efforts to obtain the victim's presence outlined above, we conclude that the prosecution made a diligent good-faith effort to locate a victim for trial.

*Erving*, 2020 WL 5582263 at *3–4.

The state court's decision is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts. The record reveals that the prosecution made a diligent, good faith effort to secure the victim's appearance and testimony at trial. As explained by the Michigan Court of Appeals, the prosecution subpoenaed the victim and secured her presence for the first day of trial. The prosecution attempted to do the same on the second day of trial, but the victim failed to appear. The prosecution then spent two more days trying to locate the victim by sending detectives to the victim's home and places where she stayed, contacting the victim's family and friends, and checking places such as hospitals, jails, the police department, and the morgue. The prosecution also obtained a witness detainer on the third day of trial. Trial Tr., ECF No. 10-8, PageID.738–739, 791–792; Trial Tr., ECF No. 10-9, PageID.799–800; Trial Tr., ECF No. 10-10, PageID.808–809. Such

efforts, while unsuccessful, were reasonable and undertaken in good faith. While Erving contends that the prosecution could have done more to secure the victim's appearance, he fails to establish that the prosecution's actions were anything less than diligent. Habeas relief is not warranted on this claim.

### D.   Ineffective Assistance of Trial Counsel Claims

Lastly, Erving asserts that he is entitled to habeas relief because trial counsel was ineffective for advising him that he could be impeached with prior convictions thereby causing him not to testify at trial and for failing to have him and/or witnesses testify that he did not drive a burgundy Impala and was clean shaven in 2011. Respondent contends that these claims lack merit.

The Sixth Amendment to the United States Constitution guarantees a criminal defendant the right to the effective assistance of counsel. In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court set forth a two-prong test for determining whether a habeas petitioner has received ineffective assistance of counsel. First, a petitioner must prove that counsel's performance was deficient. This requires a showing that counsel made errors so serious that he or she was

not functioning as the "counsel" guaranteed by the Sixth Amendment. *Id.* at 687. Second, the petitioner must establish that counsel's deficient performance prejudiced the defense. *Id.* Counsel's errors must have been so serious that they deprived the petitioner of a fair trial or appeal. *Id.*

To satisfy the performance prong, a petitioner must identify acts that were "outside the wide range of professionally competent assistance." *Id.* at 690. The reviewing court's scrutiny of counsel's performance is highly deferential. *Id.* at 689. There is a strong presumption that trial counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. *Id.* at 689–90. The petitioner bears the burden of overcoming the presumption that the challenged actions were sound trial strategy. *Id.* at 696.

As to the prejudice prong, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A reasonable probability is one that is sufficient to undermine confidence in the outcome of the proceeding. *Id.* On balance, "[t]he benchmark for judging any claim of ineffectiveness must be whether counsel's conduct

so undermined the proper functioning of the adversarial process that the [proceeding] cannot be relied on as having produced a just result." *Id.* at 686.

The Supreme Court has confirmed that a federal court's consideration of ineffective assistance of counsel claims arising from state criminal proceedings is quite limited on habeas review due to the deference accorded trial attorneys and state appellate courts reviewing their performance. "The standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." *Harrington*, 562 U.S. at 105 (citations omitted). "When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.*

The Michigan Court of Appeals considered these claims on direct appeal and denied relief, concluding that Erving failed to show that trial counsel was ineffective under the *Strickland* standard. The court explained in relevant part:

> Defendant argues that if defense counsel had not given him legally incorrect advice, he would have testified and explained (1) the presence of his DNA on the victim's thigh and (2) that, in 2011, he did not resemble the assailant that the victim

described nor did he drive a car resembling the one the victim described. Yet even assuming that defense counsel gave defendant legally incorrect advice and that this constituted deficient performance, there is not a reasonable probability that defendant's testimony would have affected the outcome of the proceedings.

First, defense counsel already presented to the jury defendant's theory about why his DNA was found on the victim's thigh. Defense counsel argued to the jury that the victim was a prostitute, that defendant engaged in consensual sex with the victim in exchange for money, and the victim was brutally raped by someone else after defendant left. The jury apparently rejected this theory and convicted defendant. Defendant does not explain why his testimony repeating his theory to the jury would have led to a different outcome.

Second, the evidence that defendant did not drive an Impala in 2011 was already before the jury. During defense counsel's cross-examination of Detective Swift at trial, Detective Swift stated that her investigation revealed that neither defendant nor anyone in his family ever owned an Impala.

As for defendant's final argument — that he could have testified that, in 2011, he did not resemble the assailant that the victim described — defendant does not establish a reasonable probability that the outcome would have been different had this testimony been offered. Defendant's argument centers on the fact that the victim testified that her assailant had a beard, and defendant contends that he did not have a beard in 2011. While defendant is correct that the victim testified that her assailant had a beard, she testified that it was "smaller" than the one defendant had at the time she was testifying. Moreover, Detective Swift testified that the victim described her assailant as "a black male around 39 to 40 years old, dark complected, six foot in height, medium build" with "a round face," and defendant does not explain how his appearance in 2011 did not meet this description.

Most importantly, the victim identified defendant as her assailant at her preliminary examination, and this identification was supported by the finding of defendant's DNA in a sperm fraction sample taken from the victim's right interior thigh. In light of (1) the fact that the victim's identification of defendant was supported by DNA found in a sperm sample taken from the victim's thigh and (2) the fact that defendant matched the description of the victim's assailant that the victim gave to Detective Swift, there is not a reasonable probability that the jury would have discredited the victim's identification of defendant as her assailant if defendant testified that he did not have a beard when the victim was assaulted in 2011.

Defendant's argument that defense counsel was ineffective for not calling additional witnesses fails for similar reasons. Defendant argues that if defense counsel would have called defendant's mother, she could have testified that in 2011, defendant did not drive a burgundy Impala, and that his appearance in 2011 differed from that reported by the victim because he had a shaved face in 2011. But, again, defense counsel elicited from Detective Swift that defendant did not drive an Impala in 2011. And for the reasons already explained, defendant fails to establish that there is not a reasonable probability that, had the jury been told that defendant had a shaved face in 2011, the results of the proceedings would have been different.

*Erving*, 2020 WL 5582263 at *7–8.

The state court's decision is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts. It is well-settled that a criminal defendant has a constitutional right to testify in his or her own defense or to refuse to do so. *Rock v. Arkansas*,

483 U.S. 44, 53 (1987). "The right to testify is personal to the defendant, may be relinquished only by the defendant, and the defendant's relinquishment of the right must be knowing and intentional." *United States v. Webber*, 208 F.3d 545, 550–51 (6th Cir. 2000). Counsel's role is to advise the defendant about whether to take the stand, but the final decision is left to the defendant. *Id*. at 551; *see also Jones v. Barnes*, 463 U.S. 745, 751 (1983). On habeas review, there is "a strong presumption that trial counsel adhered to the requirements of professional conduct and left the final decision about whether to testify with the client." *Hodge v. Haeberlin*, 579 F.3d 637, 639 (6th Cir. 2009). If the defendant wants to testify, he can reject his attorney's tactical decision by insisting on testifying, speaking to the court, or discharging his lawyer. *United States v. Webber*, 208 F.3d 545, 551 (6th Cir. 2000) (citing *United States v. Joelson*, 7 F.3d 175, 177 (9th Cir. 1993)). If the defendant fails to do so, waiver of the right to testify is presumed. *Id.*

It is also well-settled that defense counsel must conduct a reasonable investigation into the facts of a defendant's case or make a reasonable determination that such investigation is unnecessary. *Wiggins*, 539 U.S. at 522–523; *Strickland*, 466 U.S. at 691; *Towns v.*

*Smith*, 395 F.3d 251, 258 (6th Cir. 2005). The duty to investigate "includes the obligation to investigate all witnesses who may have information concerning . . . guilt or innocence." *Towns*, 395 F.3d at 258. That being said, decisions as to what evidence to present and whether to call certain witnesses are presumed to be matters of trial strategy. *See, e.g.*, *King v. Westbrooks*, 847 F.3d 788 (6th Cir. 2017). When making strategic decisions, counsel's conduct must be reasonable. *Roe v. Flores-Ortega*, 528 U.S. 470, 481 (2000); *see also Wiggins*, 539 U.S. at 522–523. Courts find that in the context of a state habeas petition, failure to call witnesses or present other evidence constitutes ineffective assistance of counsel only when it deprives a defendant of a substantial defense. *Chegwidden v. Kapture*, 92 F. App'x 309, 311 (6th Cir. 2004).

In this case, Erving fails to show that trial counsel was ineffective for advising him not to testify at trial. Erving confirmed on the record that he did not want to testify at trial and that it was his decision not to do so. Trial Tr., ECF No. 10-10, PageID.848–849. He thus fails to overcome the presumption that he willingly agreed with counsel's advice not to testify. *See Gonzales v. Elo*, 233 F.3d 348, 357 (6th Cir. 2000).

35

Erving also fails to refute the presumption that counsel's advice not to testify was sound trial strategy. While Erving asserts that counsel mis-advised him about whether he could be impeached with his prior convictions, counsel refuted this claim at the evidentiary hearing. Counsel indicated that he understood that Erving could not be impeached with his prior convictions, that such a factor did not affect his advice, and that he advised Erving not to testify after the victim failed to appear because he could challenge the timeline of events better without Erving's testimony. Such a decision was reasonable under the circumstances.

Moreover, had Erving testified, he would have been subject cross-examination, which carries inherent risks of eliciting damaging information. Erving's defense at trial was that he had consensual sex with the victim in an area frequented by prostitutes, that he was not the person who assaulted the victim, and that the presence of unidentified DNA on the victim created a reasonable doubt about his guilt. Trial counsel was able to present evidence and arguments in support of that defense even without Erving's testimony. Erving was not deprived of a substantial defense at trial. He fails to establish that trial counsel erred and/or that he was prejudiced by counsel's conduct in this regard.

Erving similarly fails to show that trial counsel was ineffective for failing to present evidence from him or other witnesses, e.g., his mother, that he did not drive a burgundy Impala and was clean shaven in 2011. As an initial matter, the Court notes that counsel did elicit testimony from police witnesses that the victim described her assailant's car as a 2009 Burgundy Impala and that neither Erving nor anyone in his household owned such a car. Trial Tr., ECF No. 10-8, PageID.659, 683–84. Consequently, this information was before the jury such that Erving's (or another witness's) testimony was unnecessary and would have been cumulative to the police testimony.

Additionally, as to Erving's appearance in 2011, the record indicates that trial counsel did not investigate/present evidence about whether Erving was clean-shaven in 2011 because he believed that the victim's description of her assailant was not strikingly different from Erving's appearance and because Erving's DNA was found on the victim. Such a strategic decision was reasonable.

Moreover, as previously discussed, Erving was not deprived of a substantial defense at trial. Erving also fails to show that he was prejudiced by counsel's conduct given that he fits the victim's general

description of the assailant provided to police, Trial Tr., ECF No. 10-8, PageID.658, that the victim identified him as her assailant at the preliminary examination, Prelim. Ex. Tr., ECF No. 10-3, PageID.420; Trial Tr., ECF No. 10-10, PageID.831 (preliminary examination testimony read into record), and that his DNA was found on the victim. Prelim. Ex. Tr., ECF No. 10-3, PageID.406–07; Trial Tr., ECF No. 10-8, PageID.782. Given such circumstances, there is no reasonable probability that evidence that Erving was clean shaven in 2011 would have affected the outcome at trial. Erving fails to establish that trial counsel erred and/or that he was prejudiced by counsel's conduct. Habeas relief is not warranted on these claims.

## IV.   CONCLUSION

For the reasons above, the Court concludes that Erving is not entitled to habeas relief on his claims. Accordingly, the Court **DENIES** and **DISMISSES WITH PREJUDICE** the habeas petition.

Before Erving can appeal, a certificate of appealability must issue. *See* 28 U.S.C. § 2253(c)(1)(a); Fed. R. App. P. 22(b). A certificate of appealability may issue only if the petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

When a court denies habeas relief on the merits, the substantial showing threshold is met if the petitioner demonstrates that reasonable jurists would find the court's assessment of the claim debatable or wrong. *Slack v. McDaniel*, 529 U.S. 473, 484–485 (2000). "A petitioner satisfies this standard by demonstrating that ... jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). Erving makes no such showing. Accordingly, the Court **DENIES** a certificate of appealability.

**SO ORDERED.**

Dated: September 19, 2025      /s/Terrence G. Berg
                                        HON. TERRENCE G. BERG
                                        UNITED STATES DISTRICT JUDGE